# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00027-CV

### Oncor Electric Delivery Company NTU LLC, Appellant

### v.

### Mills Central Appraisal District and Mills County Appraisal Review Board, Appellees

### FROM THE 35TH DISTRICT COURT OF MILLS COUNTY
### NO. 20-04-7185, THE HONORABLE STEPHEN ELLIS, JUDGE PRESIDING

### O P I N I O N

Oncor Electric Delivery Company NTU LLC (Oncor) sued the Mills Central Appraisal District (Appraisal District) and the Mills County Appraisal Review Board (Review Board) challenging a decision of the Review Board that had dismissed for lack of jurisdiction Oncor's motions to correct an alleged error in the Mills County appraisal roll for 2019. The Mills County District Court granted the Appraisal District's plea to the jurisdiction. Oncor perfected this appeal. We will reverse the trial court's dismissal order and remand the case to that court for further proceedings.

### Factual and Procedural Background

Until May 2019, Sharyland Distribution & Transmission Services, L.L.C. (Sharyland) provided electricity transmission delivery service in the north-central, western, and panhandle regions of Texas. Privately owned electric transmission lines are subject to ad

valorem property taxation in Texas. *See* Tex. Tax Code § 11.01. Sharyland owned transmission lines in 13 Texas counties, including Mills County. In mid-2019 Sharyland filed protests under Texas Tax Code Section 41.41 challenging the Appraisal District's 2019 valuation of Sharyland's personal property in Mills County (as well as Sharyland's other 12 counties). The stated bases of the protests, which related to the valuation of Sharyland's transmission lines, were: (1) "[i]ncorrect appraised (market) value" and (2) "[v]alue is unequal compared with other properties." Sharyland and the Appraisal District later entered into a statutory agreement in which Sharyland withdrew its protests and agreed to an appraised market value of its property in Mills County. *See id.* § 1.111(e).

In May 2019, Oncor acquired ownership of Sharyland, including its property in Mills County, and subsequently changed the name of the company to Oncor.

Several months after acquiring Sharyland, Oncor discovered an alleged error in the Mills County appraisal roll. In January 2020, Oncor filed motions with the Review Board seeking to correct the error. The motions alleged that a clerical error had erroneously overstated the value of the transmission lines in Mills County and that the assessment included property that did not exist as described in the Mills County appraisal roll for 2019. The Appraisal District convened a hearing on the motions but ultimately dismissed them, concluding that it did not have jurisdiction to rule on them.

In April 2020, Oncor filed the lawsuit underlying this appeal pursuant to subsections 25.25(g) and 42.01(a)(1)(B) of the Texas Tax Code seeking review of the matters it had presented to the Review Board in its January 2020 motions. The Appraisal District filed both an answer and a separate plea to the jurisdiction. Its plea asserted that the trial court lacked jurisdiction to consider Oncor's suit as a result of the statutory agreement that Sharyland had

2

signed. The Review Board included a plea to the jurisdiction in its answer but did not join the Appraisal District's plea. After an evidentiary hearing on the Appraisal District's plea to the jurisdiction, the trial court signed an order specifically granting the Appraisal District's plea but also stating that the "case" was dismissed. Oncor perfected this appeal.

## Discussion

This case presents jurisdictional questions only. The merits of Oncor's suit are not at issue.

### *Whether the trial court ruled on the Review Board's jurisdictional challenge*

The first of several jurisdictional issues in this appeal is not a question of subject-matter jurisdiction but whether the trial court's order ruled on the Review Board's jurisdictional challenge at all, i.e., whether the order was a final judgment. If it was not a final judgment, it simply means that Oncor's suit against the Review Board is still pending in the trial court and that the Review Board is not a proper party to this appeal. Either way, however, Oncor is entitled to pursue its appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing interlocutory appeal from order that grants or denies plea to jurisdiction by governmental unit).

In construing a court order, we apply the same rules of interpretation that we apply when construing other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971); *Guerrero v. Cardenas*, No. 01-20-00045-CV, 2022 WL 210152, at *7 (Tex. App.—Houston [1st Dist.] Jan. 25, 2022, pet. denied) (mem. op.). Because the trial court's dismissal order in this case was not rendered after a conventional trial on the merits, there is no presumption that the court intended to dispose of all claims and parties. *Johnson v. Glenview Auto Fund, LLC*, No. 02-20-00369-CV, 2021 WL 3557078, at *3 (Tex. App.—Fort Worth

3

Aug. 12, 2021, no pet.) (mem. op.) ("In a case . . . where there has been no conventional trial on the merits, a judgment carries no presumption of finality." (citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 199 (Tex. 2001)).

Here, the initial inquiry is what we may look to in determining whether the trial court intended its order to be a final judgment. The starting—and often ending—point is the language of the order in question. We may look beyond the order's express terms only if its language is ambiguous. *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) ("Only where an order's terms are ambiguous—that is, susceptible of more than one reasonable interpretation—do we look to the surrounding circumstances to discern their meaning."). The supreme court's seminal decision in *Lehmann* "instructs reviewing courts to look at the record 'only if the order [i]s not clear and unequivocal.'" *In re Elizondo*, 544 S.W.3d 824, 827 (Tex. 2018) (orig. proceeding) (quoting *In re M & O Homebuilders, Inc.*, 516 S.W.3d 101, 106 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding)).

"[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party *or* unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *In re Elizondo*, 544 S.W.3d at 827 (quoting *Lehmann*, 39 S.W.3d at 205) (emphasis in original). In the present case, the trial court's order contains no statement that it was finally disposing of all claims and all parties. Accordingly, in deciding whether we may look to the record, we must determine whether the order actually disposed of every pending claim and party. We believe the "clearly and unequivocally" requirement applies to this element as well.

Reviewing the language of the trial court's dismissal order reveals the following:

- The order was not titled a "Final Judgment" or "Judgment" but an "Order";

- The title of the order—"Order Granting Defendant Mills Central Appraisal District's Plea to the Jurisdiction"—appears to indicate that the trial court was not ruling on the Review Board's jurisdictional challenge;

- The body of the order recited that the hearing was solely on the plea to the jurisdiction filed by the Appraisal District: ". . . came on for hearing Defendant Mills Central Appraisal District's Plea to the Jurisdiction.";

- The body of the order further recited that "[t]he Court . . . is of the opinion that the Plea to the Jurisdiction [singular] is meritorious and should be granted.";

- The order does not contain a Mother Hubbard clause;

- The order does not expressly state that the court was ruling on all parties and claims;

- The decretal portion of the order recited that "[i]t is therefore ordered, adjudged, and decreed that Defendant Mills Central Appraisal District's Plea to the Jurisdiction is granted . . . ."

All of the foregoing seems to indicate that the trial court intended to rule solely on the Appraisal District's plea to the jurisdiction and did not intend to rule on the plea the Review Board had asserted in its Original Answer. But the decretal portion of the order, quoted above, ended with the phrase, ". . . and this case is hereby dismissed with prejudice." The Appraisal District and the Review Board argue that by this phrase the court effectively dismissed the entire cause, including Oncor's suit against the Review Board.

From the language of the order quoted above, we conclude that the order, construed as a whole, did not actually dispose of Oncor's cause of action against the Review Board and therefore did not actually dispose of every pending claim and party; certainly it did not do so clearly and unequivocally. *See Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404 (Tex. 1971) ("When considered alone, the caption [of the order] supports the contention that only one party was being dismissed. The body of the order purports to dismiss an entire cause,

5

however. This is an ambiguous order."). Accordingly, we will look to the record to assist in determining the trial court's intent.

The record does shed further light on the trial court's intent. The court opened the hearing by stating that, "So, then, the only hearing on track for this afternoon is the motion I've now identified, the plea to the jurisdiction by the Mills Central Appraisal District." Although the attorney for the Review Board was present in the courtroom during the hearing, when questioned by the court she stated that the Review Board had not joined in the Appraisal District's plea to the jurisdiction and that, "I'm simply here as an observer from the [Review Board's] point of view." Later, when the Review Board's attorney sought to make a brief argument, the court stated, "[A]t this point I'm not going to let you speak unless they [the attorneys for Oncor and the Appraisal District] both agree."

An ambiguous order generally may be construed in light of the motion upon which it was granted. *Id.*; *Guerrero v. Cardenas*, No. 01-20-00045-CV, 2022 WL 210152, at *7 (Tex. App.—Houston [1st Dist.] Jan. 25, 2022, pet. denied) (mem. op.). As noted above, the only motion heard by the trial court was the plea to the jurisdiction filed by the Appraisal District, and the Review Board did not join in that plea.

Although the term "case" is commonly used to refer to an entire lawsuit, cause, or action, here the record and the language of the order itself weigh heavily in favor of the conclusion that the trial court's use of the word "case" was a matter of imprecise language, when "cause of action" or "claim" was almost certainly intended. We hold that the court did not intend for its order to dismiss Oncor's cause of action against the Review Board. Accordingly, the order was not a final judgment, Oncor's claim against the Review Board is still pending in the trial court, and the Review Board is not a proper party to this interlocutory appeal.

6

*Whether the Review Board's dismissal is subject to challenge*

The second jurisdictional issue involves whether the Tax Code provisions under which Oncor sued in district court allow for any appeal when the appraisal review board in question has dismissed the taxpayer's protest for lack of jurisdiction. Subsection 42.01(a)(1)(B) of the Tax Code provides that "(a) A property owner is entitled to appeal: (1) an order of the appraisal review board *determining*: . . . a motion filed under Section 25.25." (Emphasis added.) Section 25.25(g) provides: "Within 60 days after receiving notice of the appraisal review board's *determination* of a motion under this section . . ., the property owner or the chief appraiser may file suit to compel the board to order a change in the appraisal roll as required by this section." (Emphasis added.) Oncor's motion for correction of the appraisal roll was dismissed by the Review Board for lack of jurisdiction. The Appraisal District argues that Section 25.25(g) does not authorize a taxpayer to file a lawsuit to compel a review board to order a change in the appraisal roll when the board has dismissed a motion for lack of jurisdiction, on the theory that a dismissal on jurisdictional grounds does not constitute a "determination" of the motion under the statute. In effect, the Appraisal District argues that the statute permits suit to be filed only after the Review Board has made a decision on the merits. We disagree.

This Court has previously rejected the central premise of the Appraisal District's argument:

> Unified argues that the dismissal order in the present case is not "an order of the appraisal review board determining . . . a protest by the property owner" because the Board never rendered a decision on the merits of Unified's protest. *See* Tex. Tax Code Ann. § 42.01. We are unpersuaded by this argument. The statutory language is broad enough to encompass dismissals as well as determinations on the merits.

7

*Unified Hous. of Parkside Crossing, LLC v. Appraisal Rev. Bd. of Williamson Cnty.*, No. 03-09-00217-CV, 2010 WL 2133955, at *4 (Tex. App.—Austin May 22, 2010, no pet.) (mem. op.).  This is consistent with the ordinary and common legal meaning of "determination," which is simply "a final decision by a court or administrative agency."  *Determination*, *Black's Law Dictionary* (11th ed. 2019).

In addition, we note that while the statutory prerequisite for filing a suit under subsections 42.01(a)(1)(B) and 25.25(g) of the Tax Code is a "determination" by a review board, a different part of Section 25.25 expressly refers to an appraisal review board's making a "determination . . . on the merits."  *See* Tex. Tax Code § 25.25(d-1)(1).  The absence of the phrase "on the merits" from the portion of the statute at issue here is significant.  "We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted."  *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015).

We conclude that the trial court did not lack jurisdiction merely because the Review Board had dismissed Oncor's motions for lack of jurisdiction rather than ruling on the merits.

### *Whether the Section 1.111(e) agreement precludes Oncor's challenge*

The third jurisdictional issue is whether a settlement agreement entered between a taxpayer and an appraisal district under Section 1.111(e) of the Tax Code precludes courts from hearing any challenge to an appraisal roll.  To decide an issue of subject-matter jurisdiction, which this is, this Court applies the analytical framework set forth in *Texas Department of Criminal Justice v. Rangel*:

A plea to the jurisdiction "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). If a plea "challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. In determining whether the plaintiff has met that burden, "we liberally construe the pleadings, taking all factual assertions as true and looking to [the plaintiff's] intent." *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015).

595 S.W.3d 198, 205 (Tex. 2020); *see also Matzen v. McLane*, No. 20-0523, 2021 WL 5977218, at *3 (Tex. Dec. 17, 2021) ("We review orders on pleas to the jurisdiction de novo.").

In its Appellee's Brief, the Appraisal District concedes there are no relevant fact issues in this case. Accordingly, we need not "look beyond the pleadings and consider evidence submitted by the parties." *Rangel*, 595 S.W.3d at 205. Instead, we resolve the Appraisal District's plea "based solely on the pleadings." *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 689 (Tex. 2022); *see also Woodway Drive LLC v. Harris Cnty. Appraisal Dist.*, 311 S.W.3d 649, 652 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("A defendant may prevail on a plea to the jurisdiction by demonstrating that, even if all the plaintiff's pleaded allegations are true, an incurable jurisdictional defect remains on the face of the pleadings that deprives the trial court of subject-matter jurisdiction.").

Section 1.111(e) of the Tax Code provides:

An agreement between a property owner or the owner's agent and the chief appraiser is final if the agreement relates to a matter:

(1) which may be protested to the appraisal review board or on which a protest has been filed but not determined by the board; or
(2) which may be corrected under Section 25.25 or on which a motion for correction under that section has been filed but not determined by the board.

Tex. Tax Code § 1.111(e). Such agreements have been held to be final and "not subject to protest by the property owner or subject to a property owner's statutory suit for judicial review under chapter 42." *Bastrop Cent. Appraisal Dist. v. Acme Brick Co.*, 428 S.W.3d 911, 917 (Tex. App.—Austin 2014, no pet.) (quoting *Bullseye PS III LP v. Harris Cnty. Appraisal Dist.*, 365 S.W.3d 427, 432 (Tex. App.—Houston [1st Dist.] 2011, pet. denied)). Indeed, the Tax Code provides that "[t]he board may not review or reject an agreement between a property owner or the owner's agent and the chief appraiser under Section 1.111(e)." Tex. Tax Code § 41.01(b).

In the present case, Sharyland entered into such an agreement with the Review Board after filing its protest. In the "Settlement and Waiver of Protest," Sharyland stated:

> I acknowledge that the subject matter of the protest filed on the above date concerning the property described above has been settled. I hereby withdraw my protest and waive my right to any further proceeding in this matter.
>
> Describe actions to be taken: (2019) Total County Appraisal Value: $78,801,960

In its plea to the jurisdiction, the Appraisal District asserted that the trial court, like the Review Board, lacked jurisdiction to hear the suit because of the settlement agreement previously entered into by Sharyland and the Review Board. In response, Oncor argued—and continues to argue on appeal—that Sharyland's agreement did not deprive the trial court of jurisdiction to consider an appeal of the Review Board's dismissal because (1) Oncor's January 2020 motions raised different issues from those addressed in Sharyland's agreement, (2) the record contains pleadings and evidence that the agreement was the result of a mutual mistake and is therefore voidable, and (3) the court had jurisdiction under the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code § 37.004(a).

10

Because we conclude that it is dispositive of this issue in the present appeal, we need only discuss the mutual-mistake issue.

Several months after Oncor acquired Sharyland, it discovered an apparent error in the appraisal roll. Oncor learned that a mistake had been made in transmitting data to the appraisal firm representing Mills County and the other 12 counties in which Sharyland owned transmission lines. The 13 counties had contracted with a private appraisal firm, Pritchard & Abbott, Inc. (P&A), to determine the 2019 values for Sharyland's assets. Sharyland owned two different types of transmission lines, 345kV and 138kV, each having different weights and values. For the P&A appraiser to determine the values to allocate to Sharyland's two types of transmission lines, it was necessary for Sharyland to provide the appraiser with the total mileages for each of those two line types within Sharyland's entire 13-county area. This information was used by the P&A appraiser to calculate a per-mile value for each line type, which could then be used by local county appraisers to determine the value of the lines within each particular county. In transmitting the mileage information to the P&A appraiser, however, Sharyland's representative inadvertently transposed the mileages for the two line types. Oncor's petition alleged that this error, which the P&A appraiser relied on in making his calculations, produced an assessment that was inaccurate and grossly excessive. Oncor alleged that, for the 13 counties combined, the error resulted in excess ad valorem taxes of approximately $7 million.

In January 2020, shortly after learning of this mistake, Oncor filed with the Review Board two motions under Section 25.25(c) of the Tax Code seeking to correct the error, one alleging that the incorrect assessment had resulted from a clerical error and the other alleging that the assessment included property that did not exist in the form or at the location described in

11

the Mills County appraisal roll for 2019. The Tax Code permits a review board, under limited circumstances, to make such a change in the appraisal roll for a period of up to five years:

> The appraisal review board, on motion of the chief appraiser or of a property owner, may direct by written order changes in the appraisal roll for any of the five preceding years to correct:
>
> (1) clerical errors that affect a property owner's liability for a tax imposed in that tax year;
> . . . .
> (3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll . . . .

Tex. Tax Code § 25.25(c). The Review Board convened a hearing on Oncor's motions but dismissed both motions on the ground it did not have jurisdiction to consider them.

In April 2020, Oncor filed this lawsuit under subsections 25.25(g) and 42.01(a)(1)(B) of the Tax Code seeking review of the matters and grounds presented to the Review Board in the January 2020 motions. Oncor's live petition at the time of the hearing before the trial court included an allegation that a mutual mistake of fact had resulted in an error in the Mills County appraisal roll.

The doctrine of mutual mistake has been recognized in Texas for at least 125 years. *See, e.g.*, *Williams v. Dean*, 38 S.W. 1024, 1024–25 (Tex. App.—San Antonio 1897, no writ) ("[O]n the contract as claimed by plaintiff, the only theory on which he can recover is by alleging and proving that there was a mutual mistake or fraud in the counting of the cattle sold and delivered . . . ."). The Texas Supreme Court has set forth the requirements for application of the doctrine:

> Under Texas law, a release is a contract and is subject to avoidance, on grounds such as fraud or mistake, just like any other contract. Pursuant to the doctrine of

12

mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided. The parol evidence rule does not bar extrinsic proof of mutual mistake.

*Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) (citations omitted); *see also Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 779 (Tex. 2017) ("Mutual mistake . . . requires evidence showing both parties were acting under the same misunderstanding regarding the same material fact."). This Court, too, has addressed the mutual-mistake doctrine:

Under [the mutual-mistake] doctrine, a contract is voidable by the adversely affected party "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." Restatement (Second) of Contracts § 152; *see Williams v. Glash*, 789 S.W.2d 261, 263 (Tex. 1990) (citing *id.*); *Wallerstein v. Spirt*, 8 S.W.3d 774, 781 (Tex. App.—Austin 1999, no pet.) (elements of mutual mistake are (1) mistake of fact, (2) held mutually by parties, (3) which materially affects agreed-upon exchange).

*Garcia v. Baumgarten*, No. 03-14-00267-CV, 2015 WL 4603866, at *6 (Tex. App.—Austin July 30, 2015, no pet.) (mem. op.).

Oncor's petition alleged sufficient facts to affirmatively plead the elements of mutual mistake, and the Appraisal District does not contend otherwise. Accordingly, the controlling question in the present case is whether a trial court lacks jurisdiction to consider any challenge to an appraisal roll under the mutual-mistake doctrine in the face of an agreement previously made under Section 1.111(e) of the Tax Code. We believe that question is answered by the Texas Supreme Court's opinion in *Willacy County Appraisal District v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29 (Tex. 2018).

In *Willacy* the taxpayer and the appraisal district entered into a Section 1.111(e) agreement pertaining to ownership of grain that was the subject of a tax assessment. There, the

13

appraisal district asserted that the taxpayer had obtained the agreement through fraudulent misrepresentations, and the supreme court addressed whether such an agreement could be voided if it was induced by fraud. Acknowledging that "a section 1.111(e) agreement is not the same as a contract," the court nonetheless held that "some basic contract principles apply." Specifically, the court held:

> [W]hen, as here, the Legislature has made an agreement between a taxpayer and an appraisal district's administrative official final, the validity of such an agreement may be subject to attack on the basis of fraud, even if the agreement is not otherwise subject to review or rejection.

*Id.* at 51–52.

It is noteworthy that (1) one of the cases cited in *Willacy* for the proposition that "some basic contract principles apply" to a Section 1.111(e) agreement was *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990), which was a mutual-mistake case; (2) *Willacy* expressly held that "a section 1.111(e) agreement may be rendered voidable if fraud is proven," 555 S.W.3d at 34; and (3) cases relating to grounds for avoiding a contractual agreement have frequently used "fraud" and "mutual mistake" together in the same phrase, implying that the two doctrines are sufficiently related that they should be treated similarly.[1]

---

[1] *See, e.g.*, *Santos v. Mid-Continent Refrigerator Co.*, 471 S.W.2d 568, 569 (Tex. 1971) ("The parol evidence rule will not prevent proof of fraud or mutual mistake."); *Cavaness v. General Corp.*, 283 S.W.2d 33, 37 (Tex. 1955) ("[T]he well-known remedy of reformation is available in cases of fraud or mutual mistake."); *Dunn v. Duval Texas Sulphur Co.*, 152 S.W.2d 1080, 1083 (Tex. 1941) (stating it was not necessary to determine whether case presented "an issue of fact with regard to mutual mistake or fraud"); *Wheeler v. Boyd*, 6 S.W. 614, 617 (Tex. 1887) ("He can claim an abatement only for fraud or mutual mistake."); *Chesapeake Expl., L.L.C. v. Energen Res. Corp.*, 445 S.W.3d 878, 884 (Tex. App.—El Paso 2014, no pet.) ("Courts are not at liberty to rewrite the contract between the parties without pleading and proof of fraud or mutual mistake." (quoting *Eagle Life Ins. v. G.I.C. Ins.*, 697 S.W.2d 648, 651 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)).

For our purposes, however, the pivotal holding in *Willacy* is that courts may entertain a challenge to the validity of a Section 1.111(e) agreement at all. "As a general proposition, before a court may address the merits of any case, the court must have . . . jurisdiction to enter the particular judgment . . . ." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (quoting *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994)). By addressing and approving the application of fraud as a potential ground for invalidating a Section 1.111(e) agreement, the supreme court in *Willacy* necessarily held that courts have jurisdiction to review the validity of such an agreement and, with appropriate evidence, to render a judgment finding the agreement invalid. Having the power to render that "particular judgment," any error by a court could not be one of jurisdiction. The supreme court has made this clear:

> We declined [in *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990)] to issue a general rule that a violation of a procedural rule, statute, or even a constitutional requirement rendered an appellate judgment "void." Instead, such violations generally only result in a "voidable" or erroneous judgment.

*Commission for Law. Discipline v. Schaefer*, 364 S.W.3d 831, 836 (Tex. 2012).

The cases relied on by the Appraisal District are either distinguishable or inapposite. For example, two cases—*Houston Cement Co. v. Harris County Appraisal District*, No. 14-12-00491-CV, 2013 WL 3243281, at *2-3 (Tex. App.—Houston [14th Dist.]

---

Courts sometimes include in this phrase a third element such as "duress" or "accident." *See, e.g.*, *Ammann v. Ammann*, No. 03-09-00177-CV, 2010 WL 4260955, at *1 (Tex. App.—Austin Oct. 28, 2010, no pet.) (mem. op.) ("As with any other contract, absent consent of the parties, the provisions of such an agreement will not be modified or set aside except for fraud, accident or mutual mistake of fact."); *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 803 (Tex. App.—Austin 2004, pet. denied) ("[W]hile Texas courts rigorously enforce valid arbitration agreements, contractual defenses—such as fraud in the inception, mutual mistake, or unconscionability—can bar the enforcement of an arbitration agreement.").

June 25, 2013, no pet.) (mem. op.), and *MHCB (USA) Leasing & Finance Corp. v. Galveston Central Appraisal District Review Board*, 249 S.W.3d 68, 73 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)—held in general terms that courts have no jurisdiction to entertain any challenge to a Section 1.111(e) agreement. But because those cases predated the supreme court's opinion in *Willacy*, their broad jurisdictional holdings are no longer sound. Another case on which the Appraisal District relies, *Bastrop Central Appraisal District v. Acme Brick Co.*, 428 S.W.3d 911, 913 (Tex. App.—Austin 2014, no pet.), not only predated *Willacy* but was an appeal from a summary judgment. It therefore has no direct application to the jurisdictional issue in the present case.[2]

Yet another case on which the Appraisal District relies is *Signal International Texas L.P. v. Orange County,* No. 09-13-00412-CV, 2014 WL 7183667, (Tex. App.—Beaumont Dec. 18, 2014, pet. denied) (mem. op.). There, the taxpayer sought to avoid the binding effect of a Section 1.111(e) agreement on the basis of mutual mistake and other equitable claims. The taxpayer argued that contract law could be applied to reform or rescind a Section 1.111(e) agreement, relying on *In re Willacy County Appraisal District*, No. 13-13-00550-CV, 2013 WL 5942707, at *4 (Tex. App.—Corpus Christi–Edinburg Nov. 1, 2013, orig. proceeding) (mem. op.), where the 13th Court of Appeals had implied that fraud could be a "viable" defense against the finality of a Section 1.111(e) agreement. Distinguishing *In re Willacy*, the court in *Signal* rejected the taxpayer's argument:

---

[2] We note, too, that this Court in *Acme Brick* stated that Section 42.09 of the Tax Code—making certain Tax Code remedies "exclusive"—did not prevent a taxpayer from seeking "alternative relief to determine the construction and validity of the Section 1.111(e) agreement." 428 S.W.3d at 915 n.3.

16

> In light of our conclusions that the Settlement Agreement is a final resolution to Signal's right to protest the taxable situs of the Atlas Barge and that Signal has no equitable claim to rescind the Settlement Agreement, Signal's pleadings failed to plead facts that establish jurisdiction and affirmatively demonstrate an incurable defect.

2014 WL 7183667, at *6. As with the other cases discussed above on which the Appraisal District relies, *Signal* predated the supreme court's opinion in *Willacy*. For that reason, its categorical holding that courts have no jurisdiction to hear a suit challenging the validity of a Section 1.111(e) agreement on the basis of equitable claims generally—or mutual mistake specifically—is not persuasive.

Finally, the Appraisal District relies on *Valerus Field Solutions, LP v. Matagorda County Appraisal District,* No. 13-17-00520-CV, 2018 WL 4924752, at *1 (Tex. App.—Corpus Christi–Edinburg Oct. 11, 2018, no pet.) (mem. op.), where—in a post-*Willacy* decision—the 13th Court of Appeals expressly held that a Section 1.111(e) agreement was not subject to challenge on the basis of mutual mistake. But *Valerus*, like the *Acme Brick* case discussed above, was a summary-judgment case and did not address the court's jurisdiction. Indeed, because the court did not dismiss the taxpayer's challenge for lack of jurisdiction, *Valerus* can be read to support the existence of jurisdiction for a court to entertain such a challenge.[3]

The cases on which the Appraisal District relies therefore do not alter our decision that the trial court had jurisdiction to entertain Oncor's suit against the Appraisal District.

It has been brought to our attention that the 7th Court of Appeals recently decided an appeal in a similar case brought by Oncor in another of the 13 counties in which Sharyland owned transmission lines. *See Wilbarger Cnty. Appraisal Dist. v. Oncor Elec. Delivery Co.*

---

[3] We express neither agreement nor disagreement with the *Valerus* court's holding that mutual mistake cannot be a substantive defense to a Section 1.111(e) agreement.

17

*NTU, LLC*, No. 07-21-00264-CV, 2022 WL 14504688 (Tex. App.—Amarillo October 25, 2022, no pet. h.). Although the trial court in *Wilbarger* had denied the appraisal district's plea to the jurisdiction, the issues in that appeal are essentially identical to those in the present case. Relying on *Valerus*, *Signal*, and the other cases discussed above, the 7th Court concluded that the Section 1.111(e) agreement precluded Oncor's suit, reversed the trial court's order, and rendered judgment granting the appraisal district's plea to the jurisdiction. For the reasons previously discussed in this opinion, we respectfully disagree with the result reached in *Wilbarger* and therefore decline to follow it.

## Conclusion

Having concluded that the trial court erred in dismissing Oncor's cause of action against the Appraisal District for lack of jurisdiction, we reverse the trial court's dismissal order and remand that portion of the case to that court for further proceedings.

_____

J. Woodfin Jones, Justice

Before Justices Baker, Smith, and Jones*

Reversed and Remanded

Filed: December 6, 2022

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).